# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

————————————

TODD LOPEZ, as Personal Representative
of the wrongful death estate of Joe A. James,

     Plaintiff,

     v.                             No. 1:22-cv-00832-KWR-JMR

CANTEX HEALTH CARE CENTERS II, LLC,
and FARMINGTON HEALTH CARE CENTERS, LTD CO.
*d/b/a* CEDAR RIDGE INN*,*

     Defendants.

## CONSOLIDATED ORDER REMANDING CASES

**THIS MATTER** comes before the Court on consolidated motions to remand filed in the following eight wrongful death cases:   (1) *Lopez v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00822 KWR/JMR; (2) *Lopez v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00824 KWR/JMR; (3) *Lopez v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00825 KWR/JMR; (4) *Lopez v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00826 KWR/JMR; (5) *Lopez v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00827 KWR/JMR; (6) *Lopez v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00831 KWR/JMR; (7) *Murphy v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00832 KWR/JMR; and (8) *Lopez v. Cantex Health Care Centers II, LLC, et al*., 22-cv-00834 KWR/JMR.

In each case, Defendants also filed a motion for extension of time to file an untimely response to the motion to remand.  Each case is before the undersigned.  Plaintiffs Mr. Lopez and Mr. Murphy ("Plaintiffs") serve as the personal representatives for the eight different wrongful death estates.  For the reasons stated below, in **each** case the Court (1) **DENIES** the motion for

extension of time and (2) **GRANTS** the motion to remand.  Each case **SHALL BE REMANDED** to the First Judicial District Court, County of Santa Fe, New Mexico.  This order **WILL BE ENTERED** in all eight cases.

Defendants removed these cases from state court on the basis of (1) diversity jurisdiction; (2) federal question jurisdiction; and (3) federal officer jurisdiction.  For the reasons stated below, the Court will grant Plaintiffs' motions to remand as unopposed, or alternatively grant the motions on the merits for lack of subject matter jurisdiction.

## BACKGROUND

Plaintiffs represent the wrongful death estates of several individuals who died in nursing and long-term care facilities owned by Defendants.  On behalf of the wrongful death estates, Plaintiffs filed Complaints for Wrongful Death in the First Judicial District Court, County of Santa Fe, New Mexico.  The complaints asserted the following four state law causes of action against Defendants:

Count I: Negligence resulting in wrongful death, including ordinary negligence,

negligent hiring, training, retention, and/or supervision, negligence per se, and

respondeat superior;

Count II: Violations of the Unfair Practices Act;

Count III: Civil Conspiracy; and

Count IV: Joint Venture.

Plaintiffs alleged that Defendants failed to implement measures to prevent or mitigate the spread of COVID-19.  They alleged that Defendants failed to implement or enforce an appropriate facility control plan, failed to routinely and systematically clean and sterilize common medical equipment and other high-contact surfaces within Defendants' facility, failed to use personal

protective equipment, permitted or required staff members to continue working at the facility despite exhibiting COVID-19 symptoms, and operated the facilities with an insufficient number of staff.

Defendants removed these cases to this court. Plaintiffs filed their motions to remand on December 1, 2022. Defendants' responses were due on or about December 15, 2022. Instead, on December 20, 2022, Defendants filed untimely motions for extension of time to file their responses, and unauthorized, untimely responses to the motions to remand on December 23, 2022.

Because the motions to remand and accompanying briefing appeared to be identical or substantially similar, the Court consolidated the motions to remand for the purpose of issuing the following ruling. This consolidated ruling will be filed in each case.

## DISCUSSION

I.   **Defendants' untimely motions for extension of time to file untimely responses to the motions to remand are denied.**

A.   **The Court denies Defendants' motions for extension of time to respond to Plaintiffs' motions to remand, finds that Defendants did not show excusable neglect, and grants the motions to remand as unopposed.**

Defendants filed motions for extension of time to respond to the motions to remand out of time, and shortly thereafter filed responses to the motions to remand without the Court's permission. For the reasons stated below, the Court will deny the untimely motions for extension of time for failure to show excusable neglect under Fed. R. Civ. P. 6(b)(1)(B), strike the untimely responses to the motions to remand, and grant the motions to remand as unopposed pursuant to the Court's local rules. *See* D.N.M.LR-Civ. 7.1(b) ("The failure of a party to file and serve a response

in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.").

It is undisputed that the motions for extension of time and the responses were filed untimely.  Plaintiffs filed their motions to remand on December 1, 2022.  The responses to the motions to remand were due within fourteen days of the filing of those motions, D.N.M.LR-Civ. 7.4(a), and the motions for extension of time was due within that same time period.  *Id.*  Defendants filed untimely motions for extension of time on December 20, 2022.  The untimely responses to the motions to remand were filed on December 23, 2022, without the Court's permission.

The parties appear to agree that the Court may grant an out of time extension if the Court finds excusable neglect pursuant to Fed. R. Civ. P. 6(b)(1)(B).  Therefore, the Court will consider whether Defendants established excusable neglect.

District courts may allow untimely filings "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). A finding of excusable neglect depends on four factors: "[1] the danger of prejudice to the [non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (citation omitted).  "The most important factor is the third; an inadequate explanation for delay may, by itself, be sufficient to reject a finding of excusable neglect." *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017); *See United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004).  Here, the Court finds that Defendants failed to establish excusable neglect.

As to the first factor, the Court finds that Plaintiffs were prejudiced.  Defendants' delay, which includes the time spent briefing the motions for extension of time, has prejudiced Plaintiffs'

by delaying the resolution of their case, increasing their costs by having to not only fully brief the motions to remand, but also the motions for extension of time to respond.  Moreover, Plaintiffs have had to spend more time in a forum they did not choose.

As to the second factor, the length of the delay, Defendants filed their remand responses approximately one week after the deadline.  The delay has caused a multiplication of proceedings in this court.

As to the third factor, the Court finds that Defendants failed to show a justifiable or good reason for the delay, and finds that any delay was within their reasonable control.

Defendants assert that their responses were untimely because the deadline was miscalendared by staff, and the miscalendaring was caused by staff illness.  Defendants do not give any details.  They do not explain how the alleged illness caused the miscalendaring.  They submit no evidence, aside from e-mails to opposing counsel which are largely irrelevant to excusable neglect.  *See* D.N.M.LR-Civ. 7.3(b) ("Parties must submit evidence, in the form of declarations, affidavits, deposition excerpts, or other documents, in support of allegations of fact.").  A party asserting excusable neglect bears the burden to prove it.  Defendants did not file affidavits supporting their motion or request a hearing.  The Court finds that the cursory, vague facts in their motions are insufficient to establish excusable neglect.

Alternatively, the Court finds that Defendants have not established excusable neglect, even on their allegations.  Defendants summarily argue that "due to a clerical error in the calendaring of the response deadline, the deadline was not calendared properly by staff.  Defense counsel has had several staff members out with illness and others filling in and working overtime, and thus, it was overlooked given the sheer number of other filings in the eight cases…"  *Lopez v. Cantex Health Care Centers II, LLC, et al.,* 1:22-cv-00822 KWR-JMR, **Doc. 14 at 2.**

Here, the Court finds that any "miscalendaring" was more likely than not based on a misunderstanding of the local rules. The deadline was calendared for 21 days, rather 14 days, after the response. *See, e.g., Lopez v. Cantex,* 1:22-cv-00822 KWR-JHR, Doc. 16, at 3; Doc. 16-1, Ex. A. Twenty-one days is a common deadline in various courts. Such misunderstanding of the rules or miscalculation of the deadline does not generally constitute excusable neglect. *Biodiversity Conservation All. v. Bureau of Land Mgmt.*, 438 F. App'x 669, 673 (10th Cir. 2011) (miscalculation of deadline or failure to know or understand rule does not constitute excusable neglect).

Alternatively, even if the untimely filing was not a product of misunderstanding the rules, Defendants have not shown excusable neglect based on an alleged staff member's illness or miscalendaring, or that such illness caused the delay. The Tenth Circuit recognizes that "[a] lawyer's medical problems or serious health challenges may be an adequate justification for delayed filings, and therefore can be sufficient for a finding of excusable neglect." *Perez*, 847 F.3d at 1253. Here, Defendants did not make a sufficient record establishing excusable neglect based on an alleged staff member's illness. Defendants do not describe the alleged clerical error in their motions. Moreover, Defendants vaguely blame a staff member's illness, but do not give the Court any specific facts. Defendants did not provide an affidavit identifying the staff member or explaining how the illness caused the miscalendaring.

To the extent Defendants assert they were burdened by eight separate cases, the motions to remand were all filed on the same day and appear to be identical or substantially similar. It appears that Defendants did not need to spend substantial time to tailor their responses to each case. Moreover, Defendants are represented by a large, national law firm, which is likely capable of handling these cases. Finally, the burden of eight cases does not excuse an untimely response, as

they could have sought a timely extension.  *See*, *e.g.*, *United States v. Dumas,* 94 F.3d 286, 289 (7th Cir.1996) ("'Excusable neglect' requires something more than a simple failure to meet the deadline due to a busy schedule.").

Defendants argue that Plaintiffs are at fault for failing to agree to an extension after the deadline already ran.  However, it is unclear what rule allows Plaintiffs to consent to a late filing. *See, e.g.,* Fed. R. Civ. P. 6(b)(1)(B) ("the court may, for good cause, extend the time… on motion made after the time has expired if the party failed to act because of excusable neglect.").  Even if they could consent, Plaintiffs did not cause the delay, as Defendants did not ask them for an extension until after the deadline had passed.

As to the fourth factor, the Court cannot conclude that the Defendants acted in bad faith in untimely moving for an extension of time.  However, the Court notes that Defendants filed their untimely response to the motion to remand *before* the Court ruled on the motion for extension of time to file the response.  Moreover, as explained below, Defendants included a frivolous basis for removal – federal officer jurisdiction. Therefore, while the Court cannot conclude that Defendants acted in bad faith in failing to timely respond to the motions to remand, their decision to not follow the Court's rules and include frivolous legal arguments in their motions does not weigh in their favor.

The Court finds that Defendants' excusable neglect argument fails on the third factor alone. Alternatively, weighing the factors, the Court finds that Defendants have not establish excusable neglect.  Therefore, the Court denies Defendants' motions for extension of time, strikes their untimely responses to the motions to remand, and grants the motions to remand as unopposed.

**B.   Alternatively, the Court strikes Defendants' responses and will proceed to a merits determination without considering the response or accompanying affidavits.**

The Tenth Circuit has not ruled that the Court may not grant a motion to remand as unopposed pursuant to Local Civil Rule 7.4(b).[1]  Even if it did, the Court would exercise its discretion and strike Defendants' untimely responses to the motions to remand, along with the accompanying affidavits. Upon a finding of a lack of excusable neglect, the Court may deny an untimely motion for extension of time to file a response and strike any untimely response.  *See Perez*, 847 F.3d at 1253 (affirming denial of late-filed motion to file untimely response to summary judgment motion), *cited in Palzer v. CoxCom, LLC*, 833 F. App'x 192, 198–99 (10th Cir. 2020); *Sizemore v. State of New Mexico Dep't of Lab.*, 182 F. App'x 848, 854 (10th Cir. 2006) ("The district court refused to grant an extension of time for her to file her summary judgment response and struck her untimely response. These evidentiary decisions lay within the district court's discretion, and did not, by themselves, implicate a sanction analysis, even though the omitted evidence may have been essential to Ms. Sizemore's case.").

## II.   <u>Alternatively, the Court will grant the motions to remand on the merits.</u>

Alternatively, even if the Court could not grant the motions to remand as unopposed, the Court would grant the motions to remand on the merits.  First, Defendants failed to carry their

---

[1] Although the Tenth Circuit has held that the Court may not grant a motion for summary judgment as unopposed, that decision was based on the initial burden placed on the movant pursuant to Fed. R. Civ. P. 56.  *See Reed v. Bennett*, 312 F.3d 1190, 1193-96 (10th Cir. 2002) (holding that court may strike late filed response and consider whether Rule 56 standard met without controversion of facts or consider granting motion as sanction after consideration of *Meade* factors).  Here, the Defendants bear the initial burden as (1) the parties which removed this case and the (2) proponents of subject matter jurisdiction.

Moreover, the *Meade* factors do not apply.  The *Meade* factors apply where a district court dismisses a party's claims with prejudice.  Here, the parties are merely returning to their original forum, and no claims are dismissed. Given that Defendants bear the burden of asserting subject matter jurisdiction, a return to state court is not a severe sanction.  Alternatively, the Court notes that the *Meade* factors overlap with the excusable neglect standard, which the Court has already analyzed.

burden to show diversity jurisdiction exists.  Second, the Court lacks federal question jurisdiction. Finally, removal on the basis of federal officer jurisdiction is frivolous.

> **A.    Defendants did not demonstrate diversity jurisdiction exists by a preponderance of the evidence.**

In their motions, Plaintiffs argued that Defendants had not carried their burden of establishing diversity jurisdiction by a preponderance of the evidence. Plaintiffs argued that the factual allegations supporting diversity jurisdiction were summarily alleged or were mere legal conclusions.  In response, Defendants had the burden of establishing diversity jurisdiction by a preponderance of the evidence.  As explained above, the Court struck the Defendants' untimely responses to the motions to remand, and therefore Defendants did not carry their evidentiary burden.  Alternatively, even if the Court considered the responses, Defendants responded by merely placing their summary allegations or legal conclusions from the notice of removal in affidavit form.  As explained below, the Court finds that Defendants have not established the citizenship of the Defendants by a preponderance of the evidence.

A defendant can remove a civil case brought in state court if the federal court has original jurisdiction. 28 U.S.C. § 1441(a).  There is a presumption against removal jurisdiction, which the defendant seeking removal must overcome.  *See Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir.1982); *Martin v. Franklin Capital Corp.*, 251 F.3d 1283, 1290 (10th Cir. 2001).

Defendants removed under diversity jurisdiction.  In order to invoke diversity jurisdiction, "a party must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000." *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013) (citation omitted).  "Complete diversity is lacking when any of the plaintiffs has the same residency as even a single defendant."  *Id.*

"Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013). "As the parties removing this case to federal court, the defendants bear the burden of establishing jurisdiction by a preponderance of the evidence." *Id.*; *see also Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004).

Plaintiffs moved to remand, asserting in part that there was insufficient evidence in the record supporting the Defendants' citizenship allegations. Because Plaintiffs contested the citizenship of the Defendants, Defendants had the burden of responding to the motion and submitting evidence or proving jurisdictional facts. Specifically, a removing defendant "is required to prove *jurisdictional facts* by a preponderance of the evidence" to remain in federal court. *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008); *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245–46 (10th Cir. 2012) (the defendant must "prove ... jurisdictional facts by a preponderance of the evidence" to remain in federal court). Although Defendants were not required to attach evidence to their notices of removal, they were required to prove jurisdictional facts by a preponderance of the evidence *after* Plaintiffs challenged the evidence in their motions to remand.

In addition to proving jurisdictional facts by a preponderance of the evidence, the removing defendants cannot "offer mere legal conclusions." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). Instead, the removing defendant must also assert "the underlying facts supporting each of the requirements for removal jurisdiction." *Id.* This burden is especially appropriate here where the relevant facts regarding the citizenship of the Defendants are in Defendants' control, and Defendants have not responded to Plaintiffs' discovery requests (as of the briefing on the motions). For the reasons stated below, the Court finds that Defendants did not satisfy their burden of proving

jurisdictional facts supporting diversity jurisdiction by a preponderance of the evidence.

As noted above, the Court struck Defendants' untimely responses and the attached affidavit. Without any evidence, the Defendants' failed to carry their burden of proving jurisdictional facts supporting diversity jurisdiction by a preponderance. *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245–46 (10th Cir. 2012) (the defendant must "prove ... jurisdictional facts by a preponderance of the evidence" to remain in federal court).

Alternatively, even if the Court were required to consider the responses and accompanying affidavit, the summary or conclusory assertions of fact do not establish jurisdictional facts supporting diversity jurisdiction.

Defendants attached to their responses an affidavit from Mr. Ericksen, the General Counsel of an entity which is not a party to the action, Cantex Continuing Care Network LLC. The affidavit is merely a duplicate of the summary allegations or legal conclusions in the notice of removal. There are no *facts* in the affidavit which demonstrate that Mr. Ericksen has personal knowledge of the facts in the affidavit. It is unclear what connection Mr. Ericksen has with the Defendants. He is the general counsel of a separate entity, and the entity's relationship to the Defendants is not explained in the affidavit. Moreover, he does not explain where he obtained the information in the affidavit. It is unclear, for example, how he knows certain individuals' domiciles. In sum, Defendants haves not shown that Mr. Ericksen's affidavit is based on personal knowledge but is merely a summary recitation of the conclusory allegations in the notice of removal. The Court finds the affidavit is insufficient to establish diversity jurisdiction.

The affidavit is insufficient to establish the citizenship of the Defendants for additional reasons. The affidavit contains legal conclusions, without facts supporting those legal conclusions,

or merely summarily asserts facts in a manner the Court finds insufficient to establish diversity jurisdiction under the relevant legal tests, as explained below.

The Defendants include limited liability companies ("LLCs").   An LLC takes the citizenship of each of its members.  *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1239 (10th Cir. 2015).  The Defendants' members include both individuals and corporations. The Court finds that Defendants have not established the citizenship of each member.

An individual is a citizen of the state where he or she is domiciled.  "An individual's residence is not equivalent to [her] domicile and it is domicile that is relevant for determining citizenship." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015). "[A] person acquires domicile in a state when the person resides there and intends to remain there indefinitely." *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).  "When it comes to determining a person's domicile for diversity-jurisdiction purposes, a district court should consider the totality of the circumstances." *Middleton v. Stephenson*, 749 F.3d 1197, 1200–01 (10th Cir. 2014), *citing* Wright et al. § 3612, at 536–41 (listing "the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity").

Here, Defendants merely state the individual's domicile, but do not give any facts to show citizenship or domicile by a preponderance of the evidence.  There are no facts in the record for the Court to apply the legal tests stated above.  Defendants merely restated the summary allegations in the notice of removal, which Plaintiffs challenged as insufficient.

Similarly, for corporations Defendants summarily allege where the corporations are incorporated and their principal place of business, but do not provide any facts to support those conclusions. For example, a corporation is considered domiciled where it is incorporated and where it has its principal place of business, 28 U.S.C. § 1332(c)(1), which is defined as "the place where a corporation's officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend,* 559 U.S. 77, 130 S.Ct. 1181, 1192, 175 L.Ed.2d 1029 (2010). Here, there are no facts in the record for the court to determine where the corporation's officers direct, control and coordinate the corporation's activities. Similarly, Defendants provide no facts or evidence supporting the place of incorporation.

The Court finds that Defendants have not established the citizenship of the defendants and their members by a preponderance of the evidence.  This burden is particularly appropriate here, where Defendants are in control evidence relevant to the citizenship of each member of the Defendants, and Plaintiffs likely have no way of independently verifying at this stage in the proceeding.  It appears that Plaintiffs have not yet obtained discovery. *Lopez v. Cantex Health Care Centers II, LLC*, 22-cv-822, Doc. 16 at 11 ("Indeed, Defendants have willfully failed to respond to Plaintiff's discovery requests that were served to them with the Complaint. Defendants have taken the position that they do not have to answer Plaintiff's discovery requests because Defendants removed this case to federal court.").  Although Plaintiffs raised the lack of specificity of the conclusory allegations in their motions, Defendants repeated their legal conclusions or summary allegations in affidavit form.  This is despite the fact Defendants are in control of the evidence regarding the citizenship of each defendant.

Therefore, the Court finds that Defendants have not establish diversity jurisdiction by a preponderance of the evidence.

**B.      A PREP Act defense does not create federal question jurisdiction in this case.**

Plaintiffs only asserted state law claims in their complaints.  Defendants nevertheless assert that federal question jurisdiction exists, because the Defendants may assert a *defense* under the PREP Act.

District courts have federal question jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "To exercise federal question jurisdiction under 28 U.S.C. § 1331, there must be a constitutional or federal statutory provision under which plaintiff [ ] [is] aggrieved." *Western Shoshone Business Council for and on Behalf of Western Shoshone Tribe of Duck Valley Reservation v. Babbitt*, 1 F.3d 1052, 1058 (10th Cir. 1993) (citing *Gully v. First National Bank*, 299 U.S. 109, 112 (1936)). A federal district court has jurisdiction over cases in which "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Under the well-pleaded complaint rule, if the federal question does not appear on the face of the plaintiff's complaint, there is no federal question jurisdiction. *See Garley*, 236 F.3d at 1207. In determining whether a claim arises under federal law, courts examine the well-pleaded allegations of the complaint and ignore potential defenses. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

Although Plaintiffs did not plead any federal claims, Defendants argue that federal question jurisdiction exists because they assert a defense under the PREP act, which completely preempts Plaintiffs' claims.  "Generally, preemption provides a defense, not a basis for removal." *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 852 (6th Cir. 2023), *citing Caterpillar Inc. v. Williams*, 482 U.S. 386, 392–93, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Therefore, even if the statute has some preemptive force, ordinary preemption cannot be used as a basis for removal.

To assert federal question jurisdiction over Plaintiffs' complaint based on state law claims, Defendants must prove *complete preemption*. "Complete preemption is an exception to the well-pleaded complaint rule, in which federal preemption makes the state claim federal in character." *Salzer*, 762 F.3d at 1134. "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that action, even if pleaded in terms of state law, is in reality based on federal law." *Anderson*, 539 U.S. at 8, 123 S.Ct. 2058. *See also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) ("Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.").

Complete preemption is rare. "The name misleads because its focus is not on preemption (a defense to a state-law claim) but on federal occupation of a field. That happens only when federal law creates an exclusive cause of action and set[s] forth procedures and remedies governing that cause of action, such that it wholly displaces the state-law cause of action." *Martin*, 37 F.4th at 1213, *citing Beneficial National Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

The Public Readiness and Emergency Preparedness Act (PREP Act), 42 U.S.C. § 247d to § 247d–10, creates immunity for damages resulting from the use of covered countermeasures. However, it creates an exception to that immunity for willful misconduct of covered countermeasures. "Section 247d–6d(a)(1) forbids liability under state law for injuries caused by use of a "covered countermeasure", and § 247d–6d(d)(1) creates a federal claim for injuries caused by "willful misconduct" in connection with covered countermeasures." *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022). "Section 247d–6d(a)(1) is an ordinary rule of preemption, a defense to liability under state law. It does not create a new federal claim. Section

247d–6d(d)(1), which does create a federal claim (payable from a federal fund), covers only a subset of potential wrongs, those involving willful misconduct in using covered countermeasures, and does not preempt any other kind of claim, let alone occupy the field of health safety." *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022).

Here, the circuit courts which have addressed this issue so far appear to uniformly hold that the PREP Act does not completely preempt state law claims. *Hudak Est. of Koballa v. Elmcroft of Sagamore Hills*, 58 F.4th 845 (6th Cir. 2023); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022); *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679 (9th Cir. 2022); *Mitchell v. Advanced HCS, L.L.C.,* 28 F.4th 580 (5th Cir. 2022); *Perez on behalf of Est. of Lozano v. Se. SNF, L.L.C.*, No. 21-50399, 2022 WL 987187, at *2 (5th Cir. Mar. 31, 2022).   The Court finds these cases persuasive and concludes that the PREP Act does not completely preempt state law claims, and a PREP Act defense does not create federal question jurisdiction or allow the removal of these cases.

Defendants argue that the claims are preempted because they reference covered countermeasures. However, Plaintiffs do not allege that the use of covered countermeasures lead to deaths. Plaintiffs allege that Defendants failed to implement certain measures, such as failing to implement a facility control plan to contain and prevent the spread of COVID-19, failing to clean and sterilize medical equipment and surfaces, failing to utilize PPE, allowing staff members to work in the facility while exhibiting COVID-19 symptoms, and failing to sufficiently staff the facility.  *See* **Doc. 1-5** (complaint for wrongful death).   Many of these are not covered countermeasures.  *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213–14 (7th Cir. 2022).  As to the PPE, Plaintiffs assert they "*failed to use* masks and other protective equipment. This is the opposite of a contention that a covered countermeasure caused harm." *Martin v.*

*Petersen Health Operations, LLC*, 37 F.4th 1210, 1213–14 (7th Cir. 2022).  Therefore, Plaintiffs' complaint does not fall under the PREP Act.

Even if Plaintiffs did allege the use of a covered countermeasure, the statute does not completely preempt state law claims.  "[T]his immunity provision reflects 'an ordinary rule of preemption, a defense to liability under state law.'" *Hudak Est. of Koballa v. Elmcroft of Sagamore Hills*, 58 F.4th 845 (6th Cir. 2023), *quoting Martin*, 37 F.4th at 1213. "It does not create a federal cause of action that completely preempts covered state-law claims. Thus, the immunity provision might or might not provide [defendant] with a viable defense in state court, but it does not transform [plaintiff's] state-law claims into federal ones for purposes of "arising under" jurisdiction." *Id.*

Moreover, the federal cause of action for willful misconduct related to the use of covered countermeasures does not completely preempt state law claims. *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022) ("Section 247d–6d(d)(1), which does create a federal claim (payable from a federal fund), covers only a subset of potential wrongs, those involving willful misconduct in using covered countermeasures, and does not preempt any other kind of claim, let alone occupy the field of health safety.").

Plaintiffs have requested punitive damages under New Mexico law. Willfulness for punitive damages under New Mexico law is not the same as willful misconduct under the PREP Act.  *Compare* 247d-6d(c)(1)(A) ("willful misconduct" is "an act or omission that is taken – (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit.") *with* NMRA UJI 13-1827 (plaintiff can recover punitive damages under New Mexico Uniform Jury Instructions if defendant's conduct was willful.

"Willful conduct is the intentional doing of an act with knowledge that harm may result."); *see Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 411 (3d Cir. 2021) (assertion of willfulness for punitive damages is not the same as assertion of willful misconduct under PREP Act).

Therefore, Plaintiffs' state law claims are not completely preempted, and Defendants have not established federal question jurisdiction.

### C.   Defendants' assertion of federal officer jurisdiction is frivolous.

Defendants also removed this case under federal officer jurisdiction pursuant to Section 1442(a)(1). The Court finds the assertion of federal officer jurisdiction to be frivolous, and concludes that this is not a proper basis for removal.

The federal officer removal statute permits removal of a state court civil action "that is against or directed to ... any officer (or any person acting under that officer) of the United States or of any agency thereof ... for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). "The statute's 'basic purpose' is to protect against the interference with federal operations that would ensue if a state were able to arrest federal officers and agents acting within the scope of their authority and bring them to trial in a state court for an alleged state-law offense." *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1250–51 (10th Cir. 2022). Federal courts have subject-matter jurisdiction over claims that are properly removed under § 1442(a)(1). *See Mesa v. California*, 489 U.S. 121, 136, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989).

However, private defendants may assert federal officer jurisdiction under § 1442(a)(1) "if they can show (1) they acted under the direction of a federal officer, (2) the claim has a connection or association with government-directed conduct, and (3) they have a colorable federal defense to

the claim or claims." *Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022).  At least the first two elements have not been satisfied here.

First, Defendants have not shown they are acting under the direction of a federal officer. The Tenth Circuit has described the "acting under" test as follows:

> The statutory phrase 'acting under' describes 'the triggering relationship between a private entity and a federal officer.'" *Baltimore II*, 952 F.3d at 462 (quoting *Watson*, 551 U.S. at 149, 127 S.Ct. 2301). "The words 'acting under' are broad," but "not limitless." *Watson*, 551 U.S. at 147, 127 S.Ct. 2301. In this context, "under" describes a relationship between private entity and federal superior typically involving "'subjection, guidance, or control.' " *Id.* at 151, 127 S.Ct. 2301 (quoting Webster's New International Dictionary 2765 (2d ed. 1953)). Thus, a "private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152, 127 S.Ct. 2301. This "help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law [ ] ..., even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* at 152–53, 127 S.Ct. 2301. Rather, "there must exist a 'special relationship' between" the private firm and the federal superior. *Isaacson*, 517 F.3d at 137 (quoting *Watson*, 551 U.S. at 157, 127 S.Ct. 2301).

*Bd. of Cnty. Commissioners of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1251 (10th Cir. 2022).

Here, there is no evidence of any delegation from a federal officer, or any principal or principal relationship.  Moreover, there is nothing suggesting that Defendants were acting under a federal officer, aside from merely complying with regulation. "Compliance with federal laws, regulations, and rules does not transform an entity into a federal officer.  This is the same for nursing homes during the COVID-19 pandemic." *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 684–85 (9th Cir.), *cert. denied,* 143 S. Ct. 444 (2022) (applying federal officer jurisdiction to PREP Act); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1212–13 (7th Cir. 2022) (in applying PREP Act, reasoning that nursing homes "home must comply with many federal requirements, but it has been understood for a long time that regulation does not turn a private entity into a public actor."); *Perez on behalf of Est. of Lozano v. Se. SNF, L.L.C.*, No. 21-50399,

2022 WL 987187, at *2 (5th Cir. Mar. 31, 2022) (applying PREP Act, concluding that"[t]he mere fact of federal regulation, even to a high degree of specificity, cannot meet this element."); *Hudak Est. of Koballa v. Elmcroft of Sagamore Hills*, 58 F.4th 845 (6th Cir. 2023).  Defendants did not have an agreement with the federal government, did not produce a good or perform a service on behalf of the government, and has not shown that the Government exercised control to such a degree that the Government acted as Defendants' superior.  *See, e.g., Hudak Est. of Koballa v. Elmcroft of Sagamore Hills*, 58 F.4th 845 (6th Cir. 2023).

Defendant argues that their designation as "critical infrastructure" creates federal officer jurisdiction. The Court disagrees.  "It cannot be that the federal government's mere designation of an industry as important—or even critical—is sufficient to federalize an entity's operations and confer federal jurisdiction." *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 740 (8th Cir. 2021); *see also Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 406 (3d Cir. 2021).  The mere status of nursing homes as critical infrastructure "does not establish that it acted under a federal officer or agency, or that it carried out a government duty."  *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 685–86 (9th Cir.), *cert. denied,* 143 S. Ct. 444 (2022).

As in *Saldana* and all other circuit cases to consider this issue so far, Defendants have "failed to substantiate [their] claims that it was conscripted to assist a federal officer or agency in performance of a government duty or that it was authorized to act for a federal officer. All that [Defendants] ha[ve] demonstrated is that [they] operated as a private entit[ies] subject to government regulations, and that during the COVID-19 pandemic [they] received additional regulations and recommendations from federal agencies. Thus, [Defendants were] not "acting under" a federal officer or agency as contemplated by the federal officer removal statute." *Id.*

As to the second element, the claims are not associated with Government directed conduct. If anything, Plaintiffs allege that Defendants did *not* use covered countermeasures.

Finally, as to the third element, the Defendants do not have a colorable federal defense under Plaintiffs' allegations.  Generally, Plaintiffs argue that Defendants were negligent in not using covered countermeasures, and therefore their allegations do not appear to fall under the PREP Act's scope.

Therefore, Defendants have not shown that federal officer jurisdiction applies here.

**D.     There is no substantial federal question under *Grable*.**

Defendants alternatively argue that there is federal question jurisdiction, because Plaintiffs' state law claims "turn on substantial questions of federal law."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).

Under the *Grable* doctrine, "a federal court [is] able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. That is to say, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

*Grable* does not apply here because no substantial federal question is raised in the complaints. Plaintiffs' complaints do not raise a federal issue or require a court to address or resolve one.  Rather, Plaintiffs merely assert state law claims, without referencing any federal law or statute.  Defendants may attempt to raise a federal defense, but circuit courts have routinely held that *Grable* does not apply where a Defendants raise a federal defense under the PREP Act.  *See*

*Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 688 (9th Cir.), *cert. denied*, 143 S. Ct. 444 (2022) (defendant "seeks to raise a federal defense under the PREP Act, but a federal defense is not a sufficient basis to find embedded federal question jurisdiction."); *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 858 (6th Cir. 2023); *Maglioli*, 16 F.4th at 413; *Mitchell*, 28 F.4th at 588–89; *Martin*, 37 F.4th at 1214–15; *Perez on behalf of Est. of Lozano v. Se. SNF, L.L.C.*, No. 21-50399, 2022 WL 987187, at *3 (5th Cir. Mar. 31, 2022).

Moreover, it is unclear whether any federal defense applies, because Plaintiffs do not allege that Defendants' use of a covered countermeasure caused the deaths of the decedents in this case. *See, e.g., Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1214–15 (7th Cir. 2022) ("It is enough to say that the principal disputes requiring adjudication in this suit are likely to be issues such as whether the nursing home allowed members of the staff to work while ill, failed to isolate residents who contracted COVID-19, and so on. These issues have nothing to do with any federal statute, so the conditions that *Grable* sets for federal jurisdiction are not satisfied.").

Therefore, the *Grable* doctrine does not apply here and does not create federal question jurisdiction here.

## CONCLUSION

The Court denies Defendants' motions for extension of time to file untimely responses to the motions to remand, strikes Defendants' untimely responses to the motions to remand, and grants Plaintiffs' motions to remand as unopposed.  Alternatively, the Court exercises its discretion to strike Defendants' responses and grant the motions to remand on the merits, finding that Defendants failed to establish subject matter jurisdiction. Even if the Court considered Defendants' responses to the motions to remand, Defendants did not establish subject matter jurisdiction.

**IT IS THEREFORE ORDERED** that in each of the following eight wrongful death cases, the (1) motion for extension of time is **DENIED** and (2) the motion to remand is **GRANTED**:

(1) *Lopez v. Cantex Health Care Centers II, LLC, et al.*, 22-cv-00822 KWR/JMR; (2) *Lopez v. Cantex Health Care Centers II, LLC, et al.*, 22-cv-00824 KWR/JMR; (3) *Lopez v. Cantex Health Care Centers II, LLC, et al.*, 22-cv-00825 KWR/JMR; (4) *Lopez v. Cantex Health Care Centers II, LLC, et al.*, 22-cv-00826 KWR/JMR; (5) *Lopez v. Cantex Health Care Centers II, LLC, et al.*, 22-cv-00827 KWR/JMR; (6) *Lopez v. Cantex Health Care Centers II, LLC, et al.*, 22-cv-00831 KWR/JMR; (7) *Murphy v. Cantex Health Care Centers II, LLC, et al.*, 22-cv-00832 KWR/JMR; and (8) *Lopez v. Cantex Health Care Centers II, LLC, et al.*, 22-cv-00834 KWR/JMR.

**IT IS FURTHER ORDERED** that all eight wrongful death cases are **REMANDED** to the First Judicial District, Santa Fe County, New Mexico.

**IT IS FURTHER ORDERED** that the Clerk of Court is **DIRECTED** to take the necessary actions to remand these eight cases.

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**